# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| STEPHEN & DAWN CORBIN, | ) | Bankruptcy No. 12-00315 |
| | ) | |
| Debtors. | ) | |
| | ) | |

### ORDER RE: REAFFIRMATION AGREEMENT BETWEEN DEBTORS AND HSBC BANK NEVADA, N.A. – BEST BUY CO. (ECF Doc. No. 21)

This matter came before the Court for hearing on Debtors' Reaffirmation Agreement with creditor HSBC Bank Nevada, N.A. Attorney Tara Vonnahme appeared for Debtors Stephen and Dawn Corbin. Mr. Corbin was present at the hearing. After receiving statements from Mr. Corbin and Attorney Vonnahme the Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

### STATEMENT OF THE CASE

Debtors seek to reaffirm a debt secured by an iPad, iPhone, and computer printer. According to Debtors' reaffirmation agreement, the presumption of undue hardship arises under 11 U.S.C. § 524(c)(6)(A). Debtors claim the family has adjusted its transportation budget and is going to cut down on clothing expenses in order to cover the difference between monthly expenditures and income. The

Court took the matter under advisement.  The Court finds that Debtors have failed to rebut the presumption of undue hardship and denies reaffirmation.

## FINDINGS OF FACT

Stephen Corbin is a supervisor at Mobren Transportation, Inc. in Sioux City, Iowa.  Dawn Corbin is an assistant manager at Tri State Restaurants, also in Sioux City, Iowa.  Debtors are seeking to reaffirm a debt secured by an iPhone, iPad, and printer purchased from Best Buy.  Debtors seek to reaffirm $800 in debt.  The amount would be repaid at an annual fixed interest rate of 0%, with monthly payments of $50 for 16 months.  Debtors claim the current market value of the secured collateral is $800.  No evidence to support this conclusion was presented.

Debtors filed for Chapter 7 bankruptcy protection on February 28, 2012.  Debtors filed this Reaffirmation Agreement on May 22, 2012.  Debtors claim their initial debt with HSBC and Best Buy was $2,246.  Receipts show the iPad was purchased on May 31, 2011.  (ECF Doc. No. 21, at 12.)  The iPhone was purchased on August 19, 2011, and the printer was purchased on September 30, 2011.  (Id. at 13-14.)  Debtors state that Stephen needs the iPhone to communicate with his four children, and claim the printer is primarily used by the children for homework.

Debtors claimed at the June 21, 2012 hearing that the family had reduced its household transportation expenses.  The record shows Debtors have filed a

Statement of Intent to surrender a 2011 Kia Forte. (ECF Doc. No. 23.) Debtors also claim they will cut back on the $200 monthly clothing expense to pay for the reaffirmed debt. Debtors' filings do not include specifics on what the new transportation or clothing expenses will be after these adjustments.

Debtors' attorney has signed the attorney certification on the Reaffirmation Agreement provided for by 11 U.S.C. §§ 524(c)(3) and (k)(5)(A). In response to questions from the Court, Debtors' attorney argued that the terms negotiated in the reaffirmation agreement are much better than Debtors could get by replacing the items with cheaper alternatives. She claims that despite the view that some of the items included in this agreement may be seen as luxuries—the iPhone and iPad specifically—they are necessary for Debtors' family. No creditor has objected to this agreement.

## CONCLUSIONS OF LAW

"One of the fundamental goals of the Bankruptcy Code is to provide debtors with a fresh start." In re Bartz, No. 10-01897, 2011 WL 671991 at *2 (Bankr. N.D. Iowa Feb. 17, 2011) (citing Grogan v. Garner, 498 U.S. 279, 286-87 (1991)). The Code enables a fresh start by granting the "honest but unfortunate debtor" a discharge of certain debts. Grogan, 498 U.S. at 286. The Court "shall grant the debtor a discharge" unless certain grounds exist that renders the debtor ineligible to receive a discharge. 11 U.S.C. § 727(a). When an eligible debtor receives a

discharge it effectuates an injunction against actions, acts, or processes to recover or collect on debts of the debtors "whether or not the discharge of such debt is waived." 11 U.S.C. § 524(a)(2).

"A debtor may voluntarily agree in writing to repay, or reaffirm, a debt that would be dischargeable in bankruptcy." In re Vosburg, No. 11-01390, 2012 WL 1098523 at *3 (Bankr. N.D. Iowa March 30, 2012) (citing 11 U.S.C. § 542). The Bankruptcy Code includes provisions aimed at ensuring that reaffirming debtors do not fall victim to coercive and deceptive actions by creditors and to make sure "that debtors understand the consequences of entering into such agreements." In re Tarnowski, No. 08-02262, 2009 WL 424999, at *1 (Bankr. N.D. Iowa 2009) (citing In re Schmidt, 397 B.R. 481, 482 (Bankr. W.D. Mo. 2008)). Section 542(c) governs the enforceability of a reaffirmation agreement between the debtor and creditor.

> The elements of a valid reaffirmation agreement are: (1) the debtor must enter into a reaffirmation agreement prior to discharge and file the agreement with the court; (2) the agreement must clearly and conspicuously state that the debtor may rescind the agreement prior to the discharge or within sixty (60) days after the agreement is filed with the court, whichever is later; (3) the agreement is accompanied by an affidavit of the debtor's attorney, if the debtor is represented, with a declaration that the agreement is an informed and voluntary agreement by the debtor and that the reaffirmed debt does not impose an undue hardship; (4) the debtor has not rescinded the agreement at the time of discharge or within sixty (60) days after it is filed with the court; and (5) compliance with the procedural requirements of § 524(d).

4

Vosburg, 2012 WL 1098523 at *3 (quoting In re Walker, 180 B.R. 834, 846 n.20 (Bankr. W.D. La. 1995)).

"Reaffirming an obligation to repay a prepetition debt is contrary to the fresh start provisions of the Bankruptcy Code." Bartz, 2011 WL 671991 at *2; In re Pickerel, 433 B.R. 679, 683 (Bankr. N.D. Ohio 2010); In re Reed, 403 B.R. 102, 104 (Bankr. N.D. Okla. 2009); In re Jamo, 283 F.3d 392, 398 (1st Cir. 2002); In re Getzoff, 180 B.R. 572, 574 (B.A.P. 9th Cir. 1995). A reaffirmation agreement establishes an exception to discharge provisions of the Code—an exception invoked by the debtor himself. Jamo, 283 F.3d at 398. "As a result, courts must rigidly enforce the Code provisions governing the execution of reaffirmation agreements." In re Duffy, No. 11-00841, 2011 WL 4344564, at *2 (Bankr. N.D. Iowa Sept. 15, 2011); In re Grisham, 436 B.R. 896, 900 (Bankr. N.D. Tex. 2010); In re Golladay, 391 B.R. 417, 421 (Bankr. C.D. Ill. 2008).

The Bankruptcy Code requires a hearing and court approval if the debtor's monthly expenditures will exceed his monthly income after the reaffirmation. 11 U.S.C. § 542(m)(1). A presumption of undue hardship exists when the debtor's monthly expenses exceed his monthly income. Id. The debtor may rebut this presumption, in writing, by identifying additional sources of income available to make the reaffirmed payments. Id. "Bankruptcy courts have a duty to review reaffirmation agreements for undue hardship, even when the debtor's attorney

5

confirms that the debtor is capable of paying the reaffirmed debt." Bartz, 2011 WL 671991, at *3 (citing In re Miller, No. 07-00581, 2007 WL 2413012, at *1 (Bankr. N.D. Iowa 2007)); see In re Melendez, 224 B.R. 252, 260 (Bankr. D. Mass. 1998). "The debtor cannot overcome the presumption of undue hardship merely by showing that he needs [an item]." Bartz, 2011 WL 671991, at *3 (citing In re Stevens, 365 B.R. 610, 612 (Bankr. E.D. Va. 2007).

Several courts have rejected reaffirmation agreements when the reaffirmed debt would generate a negative monthly net income. See id.; see also In re Payton, 338 B.R. 899, 904 (Bankr. D.N.M. 2006); In re Husain, 364 B.R. 211, 217 (Bankr. E.D. Va. 2007). "When reaffirming a debt, the Court considers the terms of the reaffirmation agreement, **the necessity of the goods sought to be retained**, the repossession risk if the debtor does not reaffirm the debt, the goods' replacement value compared to the debt, and whether the collateral is a necessity." Vosburg, 2012 WL 1098523 at *3 (emphasis added) (citing Bartz, 2011 WL 671991 at *3); Miller, 2007 WL 2413012 at *1. This Court has previously stated: "The appropriate financial inquiry ascertains whether the debtors' expenses exceeded their income and whether the reaffirmed debt is **secured by a necessary item**." Miller, 2007 WL 2413012 at *1 (emphasis added) (citing In re Vargas, 257 B.R. 157, 166 (Bankr. D.N.H. 2001)).

6

This Court has several times denied debtor's attempts to reaffirm debts collateralized by security interest in luxury or high-cost items. E.g., Tarnowski, 2009 WL 424999 (denying reaffirmation agreement on a luxury car when debtors' monthly expenses exceeded income by $2,000); Miller, 2007 WL 2413012 (denying a reaffirmation agreement secured by a Harley-Davidson motorcycle because the court found it unnecessary); In re Vaupel, 2007 WL 2609786 (Bankr. N.D. Iowa 2007) (denying reaffirmation of a debt secured by a 1968 Chevrolet Chevelle Malibu because it was an unnecessary item). In Tarnowski, the Court noted when denying reaffirmation that debtors had not shown "that they have exhausted the less expensive alternatives than reaffirming the debt on a luxury [item]." Tarnowski, 2009 WL 424999 at *2. This Court further stated "debtors who wish to retain luxury goods rather than pay their legitimate creditors are not the type of honest but unfortunate debtor who should benefit from Chapter 7 relief." Id.

> [I]t is inappropriate for debtors to reaffirm 'their debt on these luxury items rather than following the expectation that when seeking bankruptcy relief, debtors may be expected to do some belt tightening, including, where necessary, foregoing the reaffirmation of those secured debts which are not reasonably necessary for the maintenance and support of the debtor and his family.'

Bartz, 2011 WL 671991 at *4 (quoting In re Deutscher, 419 B.R. 42, 46 (Bankr. N.D. Ill. 2009)); see In re Harter, 397 B.R. 860, 864 (Bankr. N.D. Ohio 2008).

7

## ANALYSIS

If the Reaffirmation Agreement between Debtors and HSBC Bank were approved, Debtors would be left with a $14.40 deficit each month. Since filing the reaffirmation, Debtors have filed a Statement of Intent to surrender a 2011 Kia Forte. That reduction, as well as promised reductions to Debtors' $200 monthly clothing expenditures, is argued as being adequate to cover the deficit detailed in the filing. Based on Debtors current intention to surrender the Kia, the Court is unsure whether Debtors intend to obtain a replacement vehicle, or how, if at all, the surrender of the vehicle affects Debtors' current monthly income (or loss). Since Debtors have not updated their schedules since the filing of this agreement, the Court must assume that the presumption of undue hardship still exists.

Debtors claim that the iPhone is necessary to communicate with their children, and the iPad and printer are necessary for the children's school work. See In re Cook, No. 06-11627, 2007 WL 2238397, at *1 (Bankr. E.D. Va. July 31, 2007) ("The court denied the debtor's request for approval of two reaffirmation agreements—one for a computer . . . based on a finding that the debtor could not afford the payments."); see also Bartz, 2011 WL 671991, at *3 (requiring more than a showing of need to overcome the presumption of hardship). Debtors have not provided any evidence that they attempted to look for cheaper alternative equipment that might fulfill the same needs. See Tarnowski, 2009 WL 242999 at

8

*2 ("[debtor had] not shown this Court that they have exhausted the less expensive alternatives than reaffirming the debt on a luxury [item]."). The record reflects that Debtors purchased these items from Best Buy, Inc. between nine (9) and four (4) months prior to filing bankruptcy. The Court does not agree with the Debtors' contention that the Reaffirmation Agreement represents the most cost-effective means to secure the necessary services the items in question provide.

 The Court acknowledges that Debtors' attorney signed the attorney certification with the reaffirmation agreement—a fact the Court does not take lightly. The Court also acknowledges that Debtors' desire to provide telephone and computer access for their family is a legitimate need. The Court does not disregard Debtors' contention that the services provided by the items securing this reaffirmation agreement are necessary. The Court does not, however, agree that reaffirmation is the best course. In In re Boyle the Court stated "certain kinds of assets may not normally be viewed as a luxury, but will acquire a luxury component by reason of their unusual character and [or] cost." 412 B.R. 108, 113 (Bankr. W.D.N.Y. 2009); see Tarnowski, 2009 WL 424999 at *2 ("although an [item] may be necessary . . . there is no showing made that a luxury [item] is required"). The Court finds that the items at issue in this reaffirmation possess the type of "unusual character" described in Boyle. The Court does not believe that a

cellular telephone, printer, or computer are per se luxuries, but the style and brands securing the debt currently sought to be reaffirmed are luxuries.

As stated several times before, the purpose of bankruptcy is to provide the "honest but unfortunate" debtor with a fresh start. See Grogan, 498 U.S. at 286. Allowing a debtor to maintain a certain standard of living is not the purpose of bankruptcy, and such a policy would be unfair to a debtor's unsecured creditors. See Bartz, 2011 WL 671991 at *2. The Court finds that the items securing the debt sought to be reaffirmed are luxuries. The Court determines that Debtors could meet the same needs with less expensive items. Denial of reaffirmation is in line with previous decisions.

Denial of a reaffirmation agreement, however, does not necessarily force a debtor to surrender the items sought to be reaffirmed. "The Court notes that '[a] debtor may freely choose to pay the unsecured debt but does not need to waive the benefit of the discharge to do so.'" In re Eickhoff, No. 11-00812, 2011 WL 5358424, at *1 (Bankr. N.D. Iowa Nov. 7, 2011) (quoting In re Nouchanthavong, No. 09-02181, 2009 WL 4059051, at *1 (Bankr. N.D. Iowa Nov. 13, 2009)). The Bankruptcy Code states "[n]othing contained in [Section 524] prevents a debtor from voluntarily repaying any debt." 11 U.S.C. § 524(f); see In re Berkich, 7 B.R. 483, 484 (Bankr. E.D. Pa. 1980) (noting a debtor may volunteer to make payments so the creditor will not pursue action against a guarantor).

**WHEREFORE**, the Reaffirmation Agreement between Debtor and HSBC Bank Nevada, N.A.—Best Buy Co. (ECF Doc. No. 21) is **DENIED**.

Dated and Entered: July 16, 2012

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE